IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM R.,** | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO.   24-cv-4765 |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security,** | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                                             June 23, 2025

Plaintiff William R. brought this action seeking review of the Commissioner of Social Security Administration's (Commissioner) decision denying his claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f.  This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's Request for Review (ECF No. 15) is **GRANTED**.

I.      **PROCEDURAL HISTORY**

On March 31, 2022, Plaintiff filed for SSI, alleging disability since January 1, 2020, due to post traumatic stress disorder (PTSD), major depressive disorder, generalized anxiety disorder, lumbar spine degenerative disc disease, right shoulder labral tear with impingement, bilateral hip osteoarthritis, left foot ganglion cyst and lower extremity neuropathy.  (R. 163, 165, 184, 196). Plaintiff's application was denied at the initial level and upon reconsideration, and he requested a hearing before an Administrative Law Judge (ALJ).  (R. 73-87, 97-101, 105-09).  Plaintiff, represented by counsel, and a vocational expert (VE) testified at the November 7, 2023 administrative hearing.  (R. 34-66).  On January 31, 2024, the ALJ issued a decision unfavorable

to Plaintiff. (R. 14-33). Plaintiff appealed the ALJ's decision, and the Appeals Council denied Plaintiff's request for review on July 18, 2024, thus making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (R. 1-6).

On September 10, 2024, Plaintiff filed a complaint in the United States District Court for the Eastern District of Pennsylvania and consented to my jurisdiction pursuant to 28 U.S.C. § 636(c). (Compl., ECF No. 1; Consent, ECF No. 4). On February 18, 2025, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review. (Pl.'s Br., ECF No. 15). The Commissioner filed a response on April 21, 2025. (Resp., ECF No. 20). Plaintiff filed a reply on April 28, 2025. (Reply, ECF No. 21).

## II.    FACTUAL BACKGROUND[1]

The Court has considered the administrative record and summarizes the evidence relevant to the instant request for review. Plaintiff completed eleventh grade. (R. 197). He has worked as a general laborer in waste management. (*Id.*).

### A.    Medical Evidence

#### 1.    Bipolar II Disorder

Plaintiff has had a diagnosis for bipolar II disorder since at least December 17, 2015. (*See, e.g.,* R. 289, 383, 385, 418). Plaintiff followed up with Brian K. Shablin, M.D., of the Lehigh Valley Health Center (Lehigh Valley), West Broad Street location, in Bethlehem regarding his bipolar II disorder on January 15, 2019. (R. 644). He informed Dr. Shablin that that he had not been taking his quetiapine and that he did not receive much benefit from hydroxyzine, although he indicated that "the loxapine has helped him some." (*Id.*).

---

[1] The Court summarizes only the evidence concerning the impairments at issue, Plaintiff's bipolar II disorder, neuropathy and lower back pain.

On December 17, 2020, Plaintiff reported to Dr. Shablin that "[w]ith respect to his bipolar, . . . he feels about the same and is not sure if he is getting any benefit from the medications but continues to take them." (R. 564). Nonetheless, Dr. Shablin noted that Plaintiff "seem[ed] stable" and would continue with his present medications. (R. 565).

Plaintiff received mental health treatment from psychiatrist Carlos M. Velas, M.D. and others at Life Guidance in Fountain Hill, Pennsylvania, between August 21, 2020, and September 5, 2023. (R. 1880-2167). Throughout treatment, his mood fluctuated, changing at times from congruent to depressed to labile to anxious. (*Id.*). On January 18 and June 14, 2022, Plaintiff was specifically noted to suffer from mood swings. (R. 2025, 2032, 2064). On October 27, 2023, Dr. Velas opined, *inter alia*, that Plaintiff would likely be off-task 25 percent or more of the time. (R. 2269). In support of this assessment, he explained that Plaintiff's "bipolar disorder, along with his PTSD, cause him to get off task and lose focus." (*Id.*).

### 2. Neuropathy

A February 8, 2020 treatment note from Charles Norelli, M.D., at Lehigh Valley recorded that a recent EMG for bilateral foot tingling and pain revealed evidence of peripheral polyneuropathy. (R. 441). However, a note from the following day indicated that no additional intervention was recommended because Plaintiff was already taking Neurontin. (R. 440, 1157, 1166). On September 7, 2023, Jay Varrato, D.O., of LVPG Neurology in Bethlehem recorded that Plaintiff may have "small fiber sensory neuropathy," although superimposed musculoskeletal foot pain could not be excluded. (R. 1044-45, 1052, 1260, 1276-77). An EMG the following day confirmed "a mild sensori-motor peripheral neuropathy," "probably mostly small fiber neuropathy," but it could not confirm that the neuropathy was the source of his symptoms. (R. 2190-92, 2194, 2207, 2248). Two weeks later, Crystal Lovelace, M.D., of Star Community Health Family Practice (Star Community) in Bethlehem observed that Plaintiff's

gabapentin helped "a little" with his neuropathy. (R. 2170). On October 18, 2023, Barak Marshall, D.O., also from that medical practice, added that Plaintiff's neuropathy was "[m]anaged with gabapentin," as well as oxycodone and acetaminophen. (R. 2257-58, 2260).

### 3. Lower Back Pain

Plaintiff participated in physical therapy sessions for his lower back pain from February 10 to March 19, 2020, at Lehigh Valley Hospital – Muhlenberg. (R. 577-97). At intake, he rated his pain between seven and nine on a one-to-ten scale. (R. 592). Pain was described as right-sided, aching, burning and shooting, and worsened by movement, lifting and prolonged sitting. (R. 592). During this period, his reported symptoms "show[ed] no change." (R. 577, 580, 582, 585, 587, 589-90). Plaintiff returned to physical therapy for his back pain from April 21 to June 2, 2021, at Lehigh Valley – West Broad. (R. 533-548). At intake, he rated his pain between five and ten. (R. 544). Pain was again primarily on the right side and described as burning and shooting (and sharp). (R. 545). It radiated to his groin and lower extremity and was worsened by twisting, bending, stairclimbing and prolonged standing and sitting. (*Id.*). As with the prior physical therapy sessions, Plaintiff reported no improvement of his symptoms. (R. 533, 539-41).

On August 31, 2020, Plaintiff had a lumbar spine MRI at Lehigh Valley. (R. 553). It showed mild disc desiccation at L1-L2, mild disc bulging at L2-L3 and L3-L4, mild central stenosis at L3-L4 and L4-L5, mild facet arthritis at L3-L4 through L5-S1, and a small central herniation at L4-L5. (R. 553). Another lumbar spine MRI performed on June 28, 2023, reflected an anterior disc osteophyte complex at L1-L2 and L2-L3, moderate disc bulges and mild facet arthropathy and spinal narrowing at L2-L3 through L4-L5, possible impingement of the L3 and L4 nerve roots, and mild facet arthropathy at L5-S1. (R. 1348-49, 2249).

Plaintiff saw Phuong Le, D.O, at the Lehigh Valley – Bathgate Road location for management of his back pain beginning on February 11, 2021. (R. 557-63). He complained at

4

that time of right-sided, constant, burning pain radiating into his tailbone, groin and inner thigh, with associated stiffness. (R. 558). He rated his pain as a nine on a one-to-ten scale. (R. 558). Plaintiff experienced temporary "slight improvement" following an episacral fat pad injection a few days later. (R. 556). On July 6, August 31 and September 14, 2021, Dr. Le administered left L3, L4 medial branch and L5 dorsal radiofrequency ablations to Plaintiff. (R. 510, 512, 526).

Throughout the relevant period, Plaintiff's musculoskeletal examinations were often "positive for back pain." (*See, e.g.,* R. 387, 442, 493, 542, 564, 569, 598). However, Plaintiff reported to Dr. Shablin on February 1 and May 3, 2022, that his medication allowed him to complete his normal daily activities. (R. 408, 441).

Plaintiff participated in physical therapy for pain in his thoracic spine between March 1 and April 25, 2023. (R. 1261-1324). However, he noted at intake that his lower back pain was "under control." (R. 1321).

Between May 2 and June 15, 2023, chiropractor Kurt Brzezinski of LVPG Chiropractic in Bethlehem treated Plaintiff. (R. 2173-88). At intake, Plaintiff complained of low back pain for the last 20 years with no specific onset, radiating to his groins but not down his legs. (R. 2174). Upon physical examination, Plaintiff's pain limited lumbar flexion to 30 percent and lateral bending to 25 to 30 percent (with pain in the right groin when bending to that side). (R. 2177). Straight leg raises caused pain on each side, and an Ely's test was positive on the right. (*Id.*). Plaintiff also had joint dysfunction at L4-L5 and L5-S1, as well as tenderness at the L5-S1 facet joint. (*Id.*). Additionally, Brzezinski noted tenderness and hypertonicity bilaterally in the lumbar paraspinals. (*Id.*). Plaintiff reported no changes in symptoms over the course of his treatment with Brzezinski. (R. 2180, 2182, 2184, 2186).

B.   **Non-Medical Evidence**

The record also contains non-medical evidence. At the November 7, 2023 administrative hearing, Plaintiff testified that he experiences back pain due to two car accidents and an injury suffered while working at a warehouse. (R. 44). He described his pain as radiating through his groins, legs and feet, where he also experiences numbness and burning. (R. 56-57). He explained that since January 2020 he went to physical therapy "three or four times" and received cortisone shots, radiofrequency ablations and medial branch blocks, but nothing helped with his pain. (R. 44, 47-48, 57-58). He stated that because of his pain he has difficulty sleeping and can only lift 10 pounds, walk two blocks, and sit or stand for approximately 15 minutes each. (R. 48, 50-51; *see also* R. 57).

III.   **ALJ'S DECISION**

Following the administrative hearing held on January 31, 2024, the ALJ issued a decision in which she made the following findings:

1.   The claimant has not engaged in substantial gainful activity since March 31, 2022, the application date (20 CFR 416.971 et seq.).

2.   The claimant has the following severe impairments: right shoulder labral tear and residuals of right shoulder arthroscopy, bilateral elbow joint disease, residuals of left lateral epicondylar tendon repair, lumbar disc disease, bilateral hip joint disease, bilateral feet joint disease, peripheral neuropathy, obesity, depression, anxiety, and posttraumatic stress disorder (PTSD) (20 CFR 416.920(c)).

3.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except for frequently operate foot controls bilaterally. He can frequently reach overhead and in any other direction. The claimant can frequently handle and finger with the left dominant hand. He can never climb ladders/ropes/scaffolds, and occasionally do the rest of postural. He can never be exposed to unprotected heights, and occasionally exposed to moving machinery, vibrations, and extreme cold. The claimant can perform simple, routine tasks, and make simple work-related decisions. He can have occasional contact with the public, supervisors, and co-workers. He is limited to work involving occasional changes in the work setting.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on August 1, 1977, and was 44 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since March 31, 2022, the date the application was filed (20 CFR 416.920(g)).

(R. 17-29).  Accordingly, the ALJ found Plaintiff was not disabled.  (R. 29).

IV.    **LEGAL STANDARD**

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to the Commissioner that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months.  42 U.S.C. § 1382c(a)(3)(A).  A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If she is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities.  If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work.  If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform her past work.  If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 416.920(a)(4).  The disability claimant bears the burden of establishing steps one through four.  If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, she is able to perform substantial gainful activities in jobs existing in the national economy.  *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited.  A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence

and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## V.   DISCUSSION

In his request for review, Plaintiff raises four claims:

I.   Remand must occur because the ALJ failed to even acknowledge Plaintiff's bipolar disorder (and other impairment[s]) in her decision.

II.   The ALJ failed to understand the signs and symptoms from Plaintiff's impairments. Thus, the ALJ overstated his functional capacities and understated the RFC finding.

III.   The ALJ failed to properly evaluate the medical opinion evidence.

IV.   Plaintiff's testimony-if credited as true-establishes that he is disabled.

(Pl.'s Br., ECF No. 15, at 4).

### A.   Failure to Acknowledge Impairments

#### 1.   The Parties' Positions[2]

---

[2] Because the Court finds that remand is warranted by the ALJ's failure to evaluate Plaintiff's medically determinable impairment of bipolar II disorder at step two of the sequential analysis, it does not address the parties' dispute as to whether the ALJ also neglected to address the impact of Plaintiff's obesity at step three and thereafter. *See Daniels v. Kijakazi*, No. 40-4240, 2022 WL 1289127, at *3 (E.D. Pa. Apr. 29, 2022) ("[A]n ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step.") (quoting *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (emphasis omitted)). Moreover, because this Court reaches the merits of Plaintiff's claim, it does not consider his reply, which argues that the format of Commissioner's response violates then-Chief Judge Sanchez's Standing Procedural Order for

Quoting the Cleveland Clinic's description[3] of bipolar disorder at length, as well as another website[4] discussing associated paranoia, Plaintiff asserts that his bipolar II disorder with paranoia constitutes one of his primary mental health issues, causing self-isolation, mood swings and irritability and driving his need for treatment. (*Id.* at 5-6 (citing R. 2077, 2148-49, 2152, 2157-58, 2175, 2250)). He observes that despite nearly 200 references in the record to his bipolar II disorder, and the ALJ's obligation to explain her findings in a way that shows that she considered all the evidence, the ALJ in this matter nonetheless failed to even acknowledge this impairment, let alone address its severity. (*Id.* at 6-7 (citing R. 19)). Relying extensively on this Court's decision in *Hammond v. O'Malley*, 735 F. Supp. 3d 567, 579 (E.D. Pa. 2024), Plaintiff argues that the failure to consider a well-documented impairment requires remand. (*Id.* at 7 (also citing my decision in *Gunn v. Kijakazi*, 705 F. Supp. 3d 315 (2023))). He adds that the ALJ downplayed his demyelinating neuropathy as simply "peripheral neuropathy," even though that form of neuropathy is far less serious than his. (*Id.* at 8 (citing R. 24, 2248-49)). Further, he accuses the ALJ of focusing on his 2020 lumbar spine MRI while ignoring a 2023 one with more significant findings. (*Id.* (citing R. 24, 2248-49)).

The Commissioner responds that the ALJ summarized the medical evidence (including medical opinions) and Plaintiff's subjective statements and that this Court should accept her claim that she "careful[ly] consider[ed] . . . the entire record." (Resp., ECF No. 20, at 5-6 (citing R. 17-27; *Jones v. Comm'r of Soc. Sec.*, 297 F. App'x 117, 120 (3d Cir. 2008); *Hur v. Barnhart*,

---

Cases Seeking Social Security Review. (Reply, ECF No. 21 (citing Order, ECF No. 8)).

[3] https://my.clevelandclinic.org/health/diseases/9294-bipolar-disorder (last visited June 17, 2025).

[4] https://www.bphope.com/bipolar-buzz/4-things-to-know-about-paranoia-in-bipolar-disorder/ (last visited June 17, 2025).

94 F. App'x 130, 133 (3d Cir. 2004); 91 F. App'x 775, 780 n.7 (3d Cir. 2004))).  He notes that she found that Plaintiff's PTSD, major depressive disorder and generalized anxiety disorder were severe impairments and evaluated the "overlap[ping]" symptoms associated with these conditions, which the Commissioner maintains were in any event well-managed with medication.  (*Id.* at 6-7 (citations omitted)).  He further proffers that the ALJ's findings were consistent with the State agency psychological consultant finding mild to moderate PTSD and anxiety disorder with related symptoms.  (*Id.* at 6 (citing R. 85)).  The Commissioner acknowledges that Plaintiff's medical records reflected bipolar II disorder but maintains that his two years of records from Life Guidance show that it was not the reason for treatment there.  (*Id.* (citing R. 1880-2167)).  He also highlights that Plaintiff did not allege in his benefits application that he was disabled due to bipolar disorder or testify about it at the administrative hearing.  (*Id.* (citing R. 40, 196)).  As for Plaintiff's physical impairments, the Commissioner contends that the ALJ summarized and evaluated the relevant evidence and that Plaintiff has not shown that consideration of any allegedly disregarded evidence would have changed the ALJ's decision. (*Id.* at 7 (citing *Shinseki v. Sanders*, 556 U.S. 396 (2009); *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 36 F.3d 375, 398 (3d Cir. 1994))).

        **2.**      **Analysis**

The "initial prong" of the step two analysis is "determining whether there was a medically determinable mental impairment[.]"  *Maddaloni v. Comm'r of Soc. Sec.*, 340 F. App'x 800, 802 (3d Cir. 2009) (citing 20 C.F.R. § 404.1520a(b)(1)).  Next, the ALJ must consider "the degree of functional limitation resulting from the claimant's mental impairment," i.e., whether the impairment is "severe."  *Id.*  Failing to find an impairment severe is normally harmless error where the ALJ identifies other severe impairments at the second step and continues through the remainder of the five-step review.  *See, e.g., Salles*, 229 F. App'x at 145 n.2 ("Because the ALJ

found in Salles's favor at Step Two, even if he had erroneously concluded that some of her impairments were non-severe, any error was harmless.") (citation omitted); *Shedden v. Astrue*, No. 4:10-CV-2515, 2012 WL 760632, at *9 (M.D. Pa. Mar. 7, 2012) (stating that "[a] failure to find a medical condition severe at step two will not render a decision defective if some other medical condition was found severe at step two"). This is so because the severity inquiry at step two is nothing more than "a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted). However, a step-two error is only harmless where the ALJ nonetheless accounts for "the missing medically determinable impairment in the RFC assessment and it would not otherwise affect the outcome of the case." *Friday v. Comm'r of Soc. Sec.*, No. 1:20-cv-04504-NLH, 2021 WL 3879081, at *4, 7 (D.N.J. Aug. 31, 2021). A denial of benefits lacks a substantial evidentiary basis where the ALJ disregards the existence of a medically determinable impairment both at step two and in the formulation of the RFC. *Id.*

### a.   Bipolar II Disorder

Plaintiff directs the Court to my recent *Hammond* decision, in which I held, on similar facts, that the ALJ's failure to so much as mention the claimant's documented PTSD in the decision required remand. *See* 735 F. Supp. 3d at 579. In reaching that conclusion, I relied primarily on two district court cases, *Theonen v. Comm'r of Soc. Sec.*, No. 5:21-cv-1101, 2022 WL 3577414 (N.D. Ohio Aug. 19, 2022) and *Susan W. v. Kijakazi*, No. 22-cv-05765, 2023 WL 6366043 (D.N.J. Sept. 29, 2023). In *Theonen*, the court determined that "the lack of a reference" to the claimant's established impairment "leaves the [c]ourt in doubt as to whether the ALJ followed the Social Security Administration's governing regulations." *Theonen*, 2022 WL 3577414, at *3. And the *Susan W.* court found that the ALJ's omission of any reference to certain documented impairments deprived it of the ability to assure itself that substantial

evidence supported the decision. 2023 WL 6366043, at *6. Other courts within this district have reached similar conclusions. For example, in *Friday v. Commissioner of Social Security* the District of New Jersey summarized:

> [I]t appears to the Court that the ALJ failed entirely to consider Plaintiff's medically determinable impairments of TMJ [temporomandibular joint disorder], migraines, and anxiety at step two and in the RFC determination. Thus, even if those impairments could have been properly disregarded at step two as not severe, the Court cannot find the absence of that analysis at step two to be harmless error because the ALJ did not consider those impairments in combination with her severe impairments in formulating Plaintiff's RFC.

No. 1:20-cv-04504-NLH, 2021 WL 3879081, at *5 (D.N.J. Aug. 31, 2021) (footnote omitted).

In its response, the Commissioner says nothing about *Hammond*, the cases on which it relied or any similar cases. *Cf. Susan W.*, 2023 WL 6366043, at *6 ("Indeed, the government has not even responded to Susan's argument on this point and its silence is telling."). Instead, he highlights the ALJ's claim to have "consider[ed] . . . the entire record" and submits that the Court "should take her at her word." (Pl.'s Br., ECF No. 20, at 6). However, this Court agrees with the *Friday* court that doing so "would abdicate [the] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."[5] 2021 WL 3879081, at *7 (citing *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981); *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)) (refusing to blindly credit the ALJ's "conclusory, catch-all statement that she 'considered all symptoms'").

The Commissioner's remaining arguments represent merely an "attempt[ ] [to] substitute

---

[5] The Commissioner bases his contrary suggestion on the Third Circuit's snippet in *Jones* stating that the court took the ALJ "at his word" when he wrote that he considered a particular medical source's hearing testimony but nonetheless agreed with an earlier ALJ's specifically delineated reasons for rejecting it. *Jones*, 297 F. App'x at 120. Such a situation, however, is readily distinguishable from the one here and in *Friday*, where the ALJ vaguely claims that she considered the "entire record" or "all symptoms."

[his] analysis for the analysis that should have been undertaken explicitly by the ALJ." *See Friday*, 2021 WL 3879081, at *6 ("This Court cannot incorporate Defendant's analysis to fill in the blanks of the ALJ's decision.") (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000)). He appears to suggest that the failure to acknowledge Plaintiff's bipolar II disorder was harmless because the ALJ otherwise determined that his PTSD and depressive and anxiety disorders were severe impairments and, according to the Commissioner, the symptoms from these disorders "overlap[ped]" with those from his bipolar II disorder and were managed with medication. (Pl.'s Br., ECF No. 20, at 6). Similarly, he maintains that his bipolar II disorder was not the reason that he received treatment from Life Guidance. (*Id.* (citation omitted)). However, the Commissioner's attempt to explain away the decision's deficiency on the basis of his own interpretation of the medical records is unavailing. *See Jiminez v. Comm'r of Soc. Sec.*, No. 19-12662, 2020 WL 5105232, at *5 (D.N.J. Aug. 28, 2020) ("one of the most troubling problems in this case[ ] is the Commissioner's lay opinion" attempting to interpret medical findings). Moreover, the fact that one provider may have treated conditions other than Plaintiff's bipolar II disorder hardly absolves the ALJ of her duty to consider that disorder, particularly where the record is clear that Plaintiff received treatment for it as well.[6] (*See, e.g.*, R. 564-65).

Next, the Commissioner claims that the ALJ's findings comport with the State agency psychological consultant's identification of only Petitioner's "PTSD and [ ] anxiety-related disorder" in the "Additional Explanation" provided in support of the administrative findings. (Pl.'s Br., ECF No. 20, at 5 (citing R. 85)). However, it is the ALJ, not the State agency consultant, who determines the claimant's medically determinable impairments. *Green v.*

---

[6] Indeed, even the Commissioner's suggestion that the Life Guidance providers treated only Plaintiff's *other* mental impairments is suspect, for it was Life Guidance psychiatrist Dr. Velas who explained that Plaintiff's bipolar II disorder was a primary reason that he would be off-task 25 percent or more of the workday. (R. 2269).

*Comm'r of Soc. Sec.*, 266 F. App'x 125, 127 (3d Cir. 2008). Here, little doubt exists that Plaintiff's bipolar II disorder, referenced throughout his medical records and treated with medication, constitutes a medically determinable impairment,[7] even though it is mentioned nowhere in the ALJ's decision (including at step two or the later RFC determination).

Lastly, the Commissioner observes that Plaintiff did not list bipolar II disorder as a basis for disability in his benefits application and that his attorney and he did not testify about it at his administrative hearing. (Resp., ECF No. 20, at 6). The Commissioner cites no authority for the proposition that the ALJ need only consider those impairments specifically cited by the claimant in his application or about which he presents testimony at the hearing. On the contrary, as the United States District Court for the District of Delaware has explained:

> "An ALJ is required to consider impairments a claimant says he has, *or about which the ALJ receives evidence.*" Rutherford [v. Barnhart], 399 F.3d [546,] 552 [(3d Cir. 2005)] (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)). A claimant may alert the ALJ to the fact that an impairment is alleged to be severe either in his disability application or at the administrative hearing; even if he does not do so by either of these means, if the claimant's medical records otherwise contain sufficient reference to the impairment, then the ALJ should consider that impairment in the benefits decision. *See Rutherford*, 399 F.3d at 552-53; *Eskridge v. Astrue*, 569 F. Supp. 2d 424, 438-39 (D. Del. 2008) . . . ; *see also Daniels v. Kijakazi*, CIVIL ACTION NO. 20-4240, 2022 WL 1289127, at *4 (E.D. Pa. Apr. 29, 2022); *Miller v. Colvin*, 193 F. Supp. 3d 467, 480 (E.D. Pa. 2016) (same).

*Neely v. Kijakazi*, No. 20-1551-CJB, 2022 WL 9987520, at *11 (D. Del. Oct. 17, 2022) (emphasis added).

Accordingly, the Court remands this matter for consideration of Petitioner's bipolar II disorder at step two and, as appropriate, at the ensuing steps of the sequential analysis.

---

[7] Indeed, a close reading of the response brief in this matter reveals that even the Commissioner does not challenge that Plaintiff's bipolar II disorder is medically determinable. (*See generally* Resp., ECF No. 20).

### b. Demyelinating Neuropathy

Plaintiff also alleges that at step two and beyond the ALJ downplayed his demyelinating neuropathy as less serious "peripheral neuropathy." (Pl.'s Br., ECF No. 15, at 8). According to the Cleveland Clinic (relied upon elsewhere by Plaintiff), "[p]eripheral neuropathy is an umbrella term for nerve diseases that affect a specific subdivision of your nervous system," and healthcare providers use the term interchangeably with "neuropathy."[8] Demyelinating neuropathy is a form of neuropathy in which "[t]he inflammation specifically affects the myelin sheath of your nerves. This is the protective sleeve (sheath) that's wrapped around each nerve cell (neuron). Demyelination refers to the destruction of the myelin sheath."[9] Symptoms of peripheral and demyelinating neuropathy include muscle weakness, muscle atrophy, tingling/numbness, imbalance/clumsiness, loss of mobility and neuropathic pain.[10] Some forms of peripheral neuropathy may also affect the body's autonomic processes (i.e., "the automatic functions of your body that happen without your thinking or even being aware of them"), such as blood pressure, sweating, bowel and bladder control, and sexual function.[11] Demyelinating neuropathy may cause loss or weakening of deep tendon reflexes and, in rare cases, dysphagia and double vision.[12]

---

[8] https://my.clevelandclinic.org/health/diseases/14737-peripheral-neuropathy (last visited June 17, 2025).

[9] https://my.clevelandclinic.org/health/diseases/cidp-chronic-inflammatory-demyelinating-polyneuropathy (last visited June 17, 2025).

[10] https://my.clevelandclinic.org/health/diseases/14737-peripheral-neuropathy; https://my.clevelandclinic.org/health/diseases/cidp-chronic-inflammatory-demyelinating-polyneuropathy.

[11] https://my.clevelandclinic.org/health/diseases/14737-peripheral-neuropathy.

[12] https://my.clevelandclinic.org/health/diseases/cidp-chronic-inflammatory-demyelinating-polyneuropathy.

A review of Plaintiff's medical records reveals only a single reference to "demyelinating neuropathy," the term he advances here, plus two more to "demyelinating polyneuropathy." (R. 2170, 2260). On the other hand, the record is replete with references to the term used by the ALJ in the decision, "peripheral neuropathy." (*See, e.g.,* R. 287, 1041, 1044-45, 1049, 1052, 1054, 1100, 1260, 1274, 1276-77, 2174, 2194, 2207, 2248, 2253). Many more references use the combined term, "peripheral demyelinating neuropathy." (*See, e.g.,* R. 384-86, 389, 402, 408, 411, 654, 903-04, 915, 954, 1059, 1234, 1260, 1525, 1557, 1591, 1627, 1662, 1692, 1723, 1752, 1784). In short, the "umbrella term" "peripheral neuropathy" appears to be a medically-accepted way of describing Plaintiff's condition and, as noted, an individual suffering from it may experience many of the same symptoms as one suffering, specifically, from "demyelinating neuropathy." Thus, remand based on the ALJ's alleged failure to consider Plaintiff's demyelinating neuropathy is denied.

    c.  2023 Lumbar Spine MRI

Plaintiff complains that the ALJ "skipped past" his 2023 lumbar spine MRI while relying instead on his 2020 one reflecting less significant findings. (Pl.'s Br., ECF No. 15, at 8). As summarized by the ALJ, the 2020 MRI showed "mild disc desiccation at L1-L2; mild disc bulging at L2-L3, L3-L4; mild stenosis at L3-L4 and L4-L5; small central herniation and facet arthritis at L4-L5; and mild facet arthritis at L5-S1." (R. 24). New findings in the 2023 MRI included anterior disc osteophyte complex at L1-L2 and L2-L3, moderate disc bulging at L2-L3 through L4-L5, and mildly increased spinal narrowing at L3-L4 and L4-L5. (R. 2249). Although perhaps curious that the ALJ relied upon the earlier imaging, she nonetheless determined at step two that Plaintiff's lumbar disc disease was a severe impairment. (R. 19). She also noted that it caused constant, severe back pain radiating to and causing burning, numbness and weakness in his legs and feet. (R. 23-24). Additionally, she discussed Plaintiff's

testimony regarding his pain when lifting too much or sitting, standing or walking too long, and in the RFC she assessed various postural limitations. (R. 23). "Plaintiff cannot demonstrate that any error was harmful without identifying the additional limitations the ALJ should have included in the RFC." *Kuntz v. Colvin*, No. 1:15-cv-00767-SHR-GBC, 2016 WL 6634942, at *9 (M.D. Pa. Sept. 30, 2016). Here, however, Plaintiff proffers no additional limitations, and remand is not warranted simply because the ALJ failed to mention every piece of evidence. *Hur*, 94 F. App'x at 133.

      **B.**      **Plaintiff's Remaining Arguments**

Plaintiff raises three additional arguments, all pertaining to the ALJ's formulation of his RFC. (Pl.'s Br., ECF No. 15, at 4). Because the Court remands this matter for consideration of Plaintiff's bipolar II disorder at step two and, as necessary, at subsequent steps, I do not address his arguments regarding the step four RFC determination. *See Steininger v. Barnhart*, No. 04-5383, 2005 WL 2077375, at *4 (E.D. Pa. Aug. 24, 2005) (not addressing additional arguments because the ALJ may revise her findings after remand). It is possible that, on remand, the ALJ may reach different conclusions after consideration of the evidence of Plaintiff's bipolar II disorder, rendering moot Plaintiff's present contentions concerning his RFC.

**VI.**      **CONCLUSION**

For the reasons set forth above, Plaintiff's request for review is **GRANTED**, and the matter is remanded for further proceedings consistent with this memorandum. An appropriate Order follows.

                                                BY THE COURT:

                                                /s/ Lynne A. Sitarski
                                                LYNNE A. SITARSKI
                                                United States Magistrate Judge